Colby B. Springer (CA Bar No. 214868)
cspringer@polsinelli.com
Miya Yusa (CA Bar No. 314563)
myusa@polsinelli.com
**POLSINELLI LLP**
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
(415) 248-2118

*Attorneys for Empower Annuity*
*Insurance Company of America*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMPOWER ANNUITY INSURANCE COMPANY OF AMERICA,<br><br>    Movant,<br><br>        v.<br><br>SEQUOIA CAPITAL OPERATIONS LLC,<br><br>    Respondent. | Case No.<br><br>**EMPOWER'S NOTICE OF MOTION AND MOTION TO COMPEL SEQUOIA CAPITAL OPERATIONS LLC TO COMPLY WITH SUBPOENA** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Empower Annuity Insurance Company of America ("Empower") moves the Court for an order compelling the production of documents pursuant to the Subpoena to Produce Documents and Things (the "Subpoena") to non-party Sequoia Capital Operations LLC ("Sequoia").

This motion is made on the grounds that:

(i) Empower properly issued and served a subpoena under Federal Rule of Civil Procedure 45 seeking documents from Sequoia relevant to the claims of the underlying action,

(ii) the request for documents is founded in the factual record thereby obviating any suggestion of a speculative 'fishing expedition';

(iii) the parties made multiple, good-faith efforts to reach agreement as to the scope of materials to be produced in response to the subpoena, including by reaching agreement as to several categories of documents, but despite best efforts to resolve all disputes they reached an impasse as to two issues: (1) whether Sequoia should produce documents concerning *all* consumer complaints and regulatory issues relating to consumer lending laws, and not merely those directed to the mischaracterization of consumer credit and loan services; and (2) whether Sequoia's collection and production of all documents for all categories should include all responsive materials in Sequoia's possession, custody, and control, and not merely those that are "uniquely in the possession of Sequoia."

Counsel for Empower certifies that it met and conferred in good faith with counsel for Sequoia by phone on June 30, 2023, October 26, 2023, and February 9, 2024. Declaration of Rebecca B. Horton in support of Motion to Compel Sequoia Capital Operations LLC to Comply with Subpoena ("Horton Decl.") ¶¶3, 8; Declaration of Miya Yusa in support of Motion to Compel Sequoia Capital Operations LLC to Comply with Subpoena ("Yusa" Decl.") ¶10. These meet and confers were memorialized and further elaborated upon in correspondence dated June 30, 2023, July 5, 2023, November 1, 2023, November 6, 2023, November 8, 2023, November 9, 2023,

November 16, 2023, November 20, 2023, December 22, 2023, February 16, 2024, February 27, 2024, March 5, 2024, and March 7, 2024. Horton Decl. ¶¶4, 8, 9, 11; Yusa Decl. ¶10. During each of these meet and confers, the parties attempted to resolve the disputed matter in an effort to avoid having to engage in motion practice. Horton Decl. ¶¶3, 8; Yusa Decl. ¶10. As described above and in the Memorandum of Points and Authorities, part of the discovery dispute remains unresolved despite said efforts. To date, Sequoia has produced no documents or information in response to the subpoena served on July 7, 2023. Horton Decl. ¶13.

Empower respectfully requests the assistance of the Court in compelling Sequoia's compliance with the Subpoena. *See* Fed. R. C. Proc. 26, 37, 45; *see also* Civil L. R. 37. This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the attached declarations, and the Proposed Order. Empower would ask the Court further to consider any other evidence and argument that might be presented at an oral hearing should the Court elect to conduct the same.

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF THE ARGUMENT ...................................................................1

II.     STATEMENT OF RELEVANT FACTS .........................................................2

        A.      The Underlying Action ..........................................................................2

        B.      The Subpoena to Sequoia.......................................................................4

        C.      The Parties Efforts to Reach Agreement on the Subpoena...................4

III.    DISCOVERY REQUESTS .............................................................................7

IV.     LEGAL ARGUMENT......................................................................................11

        A.      The Requested Materials are Relevant ................................................12

        B.      The Requested Materials Do Not Impose an Undue Burden................13

        C.      EFI's Document Production Does Not Excuse Sequoia's Failure to
                Comply.................................................................................................14

V.      CONCLUSION................................................................................................15

EMPOWER'S MOTION TO COMPEL
SEQUOIA CAPITAL OPERATIONS LLC TO COMPLY WITH SUBPOENA

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anaya v. CBS Broad., Inc.*,
  251 F.R.D. 645 (D.N.M. 2007) ................................................................................12

*Bd. Of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*,
  237 F.R.D. 618 (N.D. Cal. 2006) ............................................................................12

*Broadband iTV, Inc. v. Hawaiian Telecom*,
  No. 15-MC-80053 HRL, 2015 WL 1778432 (N.D. Cal. Apr. 17, 2015) ................11

*Gonzales v. Google, Inc.*,
  234 F.R.D. 674 (N.D.Cal. 2006) .............................................................................11

*Goodman v. United States*,
  369 F.2d 166 (9th Cir. 1966) ..................................................................................12

*LG Display Co. v. Chi Mei Optroelectronics Corp.*,
  2009 WL 223585 (S.D. Cal. Jan. 28, 2009)......................................................11, 15

*Mount Hope Church v. Bash Back!*,
  705 F.3d 418 (9th Cir 2012) ...................................................................................12

*Negotiated Data Solutions LLC v. Dell, Inc.*,
  2009 WL 733876 (N.D. Cal. 2009) .........................................................................11

*Nidec Corp. v. Victor Co. of Japan*,
  249 F.R.D. 575 (N.D. Cal. 2007).............................................................................12

*Phillips v. City of Fairfield*,
  No. CIV.S040377FCD PAN, 2006 WL 2868966 (E.D. Cal. Oct. 6, 2006) ............12

*Playstudios, Inc. v. Centerboard Advisors, Inc.*,
  No. 218CV1423JCMNJK, 2019 WL 6493926 (D. Nev. Dec. 3, 2019) ..................13

*Rogers v. Giurbino*,
  288 F.R.D. 469 (S.D. Cal. 2012) .............................................................................12

*Russell v. Maman*,
  No. 18-CV-06691-RS (AGT), 2020 WL 5943844 (N.D. Cal. Oct. 7, 2020) ..........14

*U.S. ex rel. Schwartz v. TRW, Inc.*,
  211 F.R.D. 388 (C.D. Cal. 2002) ............................................................................11

*U.S. E.E.O.C. v. Caesars Entertainment*,
  237 F.R.D. 428 (D. Nev. 2006)................................................................................13

*Viacom Int'l, Inc. v. YouTube, Inc.*,
   C08-80129 SI, 2008 WL 3876142 (N.D. Cal. Aug. 18, 2008).....................................13, 14, 15

**Other Authorities**

Fᴇᴅ. R. Cɪᴠ. P. 26(b)(1)...........................................................................................................12

Fᴇᴅ. R. Cɪᴠ. P. 26(b)(2)(C)(iii) ...............................................................................................13

Fed. R. Civ. P. 26(d)(3)(A)......................................................................................................14

Fed. R. Civ. P. 30(b)(6)............................................................................................................11

Fed. R. Civ. P. 45.....................................................................................................................11

EMPOWER'S MOTION TO COMPEL
SEQUOIA CAPITAL OPERATIONS LLC TO COMPLY WITH SUBPOENA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF THE ARGUMENT

Empower has brought an action against Empower Finance, Inc. ("EFI") under multiple Lanham Act claims, including trademark infringement, unfair competition and false advertising, in addition to related Colorado state claims. As one of EFI's lead investors, Sequoia has relevant documents and communications concerning: EFI's brand selection; EFI's products and services; Sequoia's investments in, and influence of, EFI's efforts; the success or failure of those efforts; and complaints by consumers, law enforcement officials, and regulators who disagree with EFI's characterization of its consumer credit and loan services. To those ends, Sequoia is likely to have communications with EFI discussing: (a) the underlying litigation, (b) related matters before the Trademark Trial and Appeal Board (TTAB), (c) EFI's knowledge and intent when adopting and using an "EMPOWER"-formative mark; (d) EFI's plans for products and services under those marks; and (e) expectations related to the consumer audience and the potential for confusion. Beyond communications between EFI and Sequoia, Sequoia is likely to have documents and communications from internal considerations and discussions that naturally arose as Sequoia managed the risk of its investment in EFI and as Sequoia closely advised EFI on its strategic business decisions. The foregoing all directly relate to the EFI products and services offered under branding and marks which infringe Empower's intellectual property rights, making all of the foregoing relevant and discoverable information by way of third-party subpoena.

Sequoia seemingly concedes the relevancy of the requested information, as it has reached an agreement with Empower to produce several categories of information, save for two caveats. First, Empower proposed (as a compromise to a number of specific requests for production) that Sequoia agree to produce "Any materials in Sequoia's possession concerning consumer complaints and regulatory issues relating to consumer lending laws, including but not limited to lawsuits, investigations, demands for information, and the like." Sequoia countered that this was acceptable, so long as it was limited to "the kind of complaints that are covered by the amended claims" and to "internal Sequoia materials." Empower sought clarity that the types of complaints would include all the activity described in its claims for deceptive business practices and false advertising, but

Sequoia refused to "look[] for every reference to a complaint a customer may have had about the service he or she received." Instead, it would apply an undisclosed criteria by which it would unilaterally decide whether a complaint was sufficiently related to the activity described in the complaint.

Second, although the parties reached an agreement that Sequoia would produce several categories of documents that could satisfy the scope of the Subpoena's requests for production, the parties are at an impasse as to whether Sequoia must produce all responsive materials. Sequoia contends that it should only have to produce those materials that are "uniquely in the possession of Sequoia"—i.e., not including documents that it believes may also be in the possession of EFI. Empower has explained to Sequoia that EFI's production has been lacking, and that while some discovery remains ongoing in the underlying litigation, there are significant concerns that EFI's collection and production has been and will be inadequate. These issues are well-known to Sequoia as Sequoia is represented by the same attorney who represents EFI, and who has represented that EFI's production is substantially complete.

Empower is not demanding that Sequoia produce duplicative materials—and has even identified to Sequoia a list of documents that EFI has already produced, so that Sequoia need not produce them again. Rather, Empower is reasonably requesting that any other responsive documents that Sequoia finds should be subject to production. Even if Sequoia believes some documents are not "uniquely in the possession of Sequoia," if they have not been produced to Empower by EFI, then they should be produced by Sequoia. That the documents theoretically *might* eventually be produced by EFI does not excuse Sequoia from complying with the Subpoena now and producing all documents that are responsive.

## II.   STATEMENT OF RELEVANT FACTS

### A.   The Underlying Action

This motion is related to an underlying federal action pending in the United States District Court for the District of Colorado. *See* Yusa Decl. Ex. A (FAC); *see also* Yusa Decl. Ex. B (Docket Report). Empower asserts claims in that action for trademark infringement, false advertising, and unfair competition under the federal Lanham Act and certain Colorado state laws against Empower

Finance Inc. ("EFI"). *See* Yusa Decl. Ex. A. The parties in that case agreed to a phased approach to ESI discovery. The first phase, including non-custodial ESI, concluded in December 2023 at which time EFI represented that its production was substantially complete. The parties are presently in a second phase in which they are collecting and producing custodial ESI based on agreed-to custodians and search terms. Discovery closes May 17, 2024 with dispositive motions due August 23, 2024. Yusa Decl. Ex. C (Pretrial Schedule). A final pre-trial conference is on calendar for early 2025. *Id.*

Empower is a financial services provider and offers those services throughout the United States. Yusa Decl. Ex. A at ¶¶19–20. Empower has used EMPOWER-branding (the "EMPOWER Marks") since as early as 2014 to identify the source and quality of its services to consumers. *Id.* at ¶¶36–39. The EMPOWER Marks have become well-known and recognized throughout the United States because of numerous sponsorships and partnerships, extensive sales, promotional efforts, and varied awards and achievements. *Id.* at ¶¶40–49. Empower alleges that EFI is infringing the EMPOWER Marks through its marketing and selling services under the EMPOWER name, in addition to other claims. *Id.* at ¶¶61–86.

Third-party subpoena recipient Sequoia is a venture capital firm. *See* Yusa Decl. Ex. D. Sequoia has played a pivotal role in EFI since its inception, and has been the lead investor in EFI through at least four funding rounds that have collectively raised more than $170 million. Yusa Decl. Ex. E. Sequoia has made not only a significant financial investment in EFI but provided substantial human resource capital including the skills and knowledge of a team of "venture capital, startup and financial technology veterans." Yusa Decl. Ex. F at 2. EFI was only able to (and did) expand its services and marketing following these rounds of funding and advisory knowledge from industry veterans, specifically those from Sequoia. According to EFI press releases, EFI used Sequoia-backed investment to "fuel growth and product innovation as [it] reimagines consumer banking for today's generation." Warren Hogarth—the CEO and co-founder of EFI—was himself a venture capitalist at Sequoia for seven years prior to decamping to EFI. *See* Yusa Decl. Ex. G.

1          **B.        The Subpoena to Sequoia**

2          Empower served Sequoia with the Subpoena on July 7, 2023. Horton Decl. Ex. H. The

3    Subpoena includes thirteen requests specifically framed to reveal information directly relevant to

4    the underlying Colorado action. These documents requests seek relevant information related to:

5    the relationship between Sequoia and EFI (e.g., RFP 1 and 7); the funding of EFI by Sequoia (e.g.,

6    RFP 2, 4, 5, 6, and 13); the dispute that makes up the underlying action (e.g., RFP 10); TTAB

7    proceedings involving the marks in that underlying action (e.g., RFP 11); discussions regarding

8    Empower (e.g., RFP 9 and 13); EFI and Empower's Marks and related Products and Services (e.g.,

9    RFP 7, 8, and 13); and customer confusion between Empower and EFI (e.g., RFP 12). The requests

10   further used specifically defined terms to target only those materials related to EFI or products and

11   services offered under the EMPOWER brand. *Id* at 19-26. The foregoing requests are all directly

12   related to one or more causes of action from the underlying action for infringement of Empower's

13   marks or supplemental claims related to the same.

14         **C.        The Parties Efforts to Reach Agreement on the Subpoena**

15         Sequoia served its objections and responses on July 21, 2023. Those objections were

16   proffered through Sequoia's counsel—Greg Gilchrist of Verso Law. Horton Decl. Ex. I.

17   Mr. Gilchrist is also lead counsel for EFI in the underlying action. Horton Decl. ¶6. Sequoia's

18   objections consisted of boilerplate objections declaring the requests "unduly burdensome,"

19   premature, or "duplicative" of evidence Empower could obtain from other sources such as EFI.

20   Horton Decl. Ex. I. at 2. An initial meet and confer took place on June 30, 2023.[1] Empower

21   proposed, and the parties thereafter agreed, that enforcement of the Subpoena would be held in

22   abeyance while Empower obtained potentially overlapping discovery from EFI. Horton Decl. ¶3.

23         Those efforts were unproductive. The smattering of documents produced by EFI failed to

24   otherwise satisfy the full and relevant scope of the Subpoena requests served on Sequoia. Empower

25   thus informed Sequoia that Empower would no longer hold enforcement of the Subpoena in

26   ─────────────────

27   [1] At the time of this meet and confer, Mr. Gilchrist was conferring on behalf of EFI and a different third-party, but was on notice of the Sequoia Subpoena that was in the process of being served and for which EFI had received the Notice of Subpoena. Thereafter, Mr. Gilchrist confirmed he was

28   representing Sequoia.

abeyance and requested a further meet and confer to discuss Sequoia's objections and responses to the Subpoena. Horton Decl. Ex. K (October 12, 2023 Horton to Gilchrist).

The parties telephonically met and conferred on October 26, 2023. Horton Decl. ¶8. The parties then continued to discuss their positions via follow up email. *See e.g.* Horton Decl. Ex. L. (November 9, 2023 Gilchrist to Horton). Empower reiterated the bases for relevance of the requested documents and requested confirmation that Sequoia would begin performing searches for and producing responsive documents. *Id.* at 4. Sequoia nevertheless maintained that the requested documents were irrelevant and the requests were overbroad. *Id* at 1.

Empower sent counsel for Sequoia further correspondence on November 16, 2023 summarizing the meet and confer efforts to date. *See* Horton Decl. Exhibit M (Nov. 16, 2023 Letter (Horton to Gilchrist)). Empower again requested that Sequoia begin searching for and producing responsive documents no later than November 20, 2023. *Id.* at 1. Empower noted its intent to raise this issue with the Court absent confirmation and associated production. *Id* at 2. Sequoia stood on its objections. *See* Horton Decl. Exhibit N (Nov. 20, 2023 Gilchrist to Hogan). Sequoia's counsel informed Empower that while *EFI* might produce documents related to investors like Sequoia, no Sequoia originating documents would be produced. *Id* at 2.

Empower sent another letter on December 22, 2023. Horton Decl. Ex. O (Dec. 22, 2023 Letter (Horton to Gilchrist)). Empower again described the relevance of the subpoenaed documents, EFI's continued deficiencies in production relating to Sequoia, and the fact that certain responsive documents are not even in in EFI's possession. *Id* at 1-2. Empower further explained that Sequoia must produce responsive documents regardless of whether Sequoia *believes* some of those documents may also be in the possession of EFI. Horton Decl. Ex. M at 2. Empower highlighted the fact that Sequoia had failed to search for or produce such documents thus calling into question the basis of the representation that EFI could somehow make an otherwise complete production that would satisfy the Sequoia obligations. *Id.*

This demand was equally unsuccessful. Despite Sequoia's dogged refusal to comply, Empower made one last attempt to meet and confer through undersigned counsel in the hope that they could resolve the matter without involving the Court. The parties met and conferred on

February 9, 2024, and subsequently exchanged several emails pursuant to which they reached agreement that Sequoia would produce the following categories of documents:

- Documents sufficient to show Sequoia's knowledge of services or products that EFI was offering or planning to offer over time.

- Any materials in Sequoia's possession that discuss branding or trademark issues that have been brought to Sequoia's attention.

- Any materials in Sequoia's possession that discuss branding or trademark issues that have NOT been brought to Sequoia's attention that Sequoia later learned about (or learned too late).

- Internal discussion regarding whether EFI should change their name.

- Internal communications regarding branding and trademark issues for the Empower mark and potential advice or strategies from Sequoia to EFI as to the same.

The parties were unable to reach agreement as to two issues. First, the parties were unable to agree on a category of documents that Empower described as "Any materials in Sequoia's possession concerning consumer complaints and regulatory issues relating to consumer lending laws, including but not limited to lawsuits, investigations, demands for information, and the like," which would include materials sought by at least Request Nos. 4, 5, 7, 8, and 9. Yusa Decl. Ex. P at 5. Sequoia suggested it was willing to agree to this category, but conditioned the scope as "relat[ing] to the kind of complaints that are covered by the amended claims." *Id*. Empower sought to clarify that Sequoia was agreeing to produce all complaints that would be relevant to "the activity described in Count 5 (deceptive business practices) and Count 6 (false advertising)." *Id*. at 3. In response, Sequoia's counsel argued that EFI had already "produced a full set of consumer complaints that goes beyond what is covered by the complaint" and that Sequoia would "not be looking for every reference to a complaint a customer may have had about the service he or she received." *Id*. at 1. Instead, Sequoia would produce "information, if any, that Sequoia discussed regarding the same kind of complaints that [EFI] already produced." *Id*. The parties thus reached an impasse as Sequoia's insistence on limiting its production to only those that EFI has already produced is unacceptable, as is its apparent intent to only produce some, but not all, complaints.

Rather, Sequoia should produce all complaints in its possession, custody, or control as they are all relevant to Empower's claims.

Second, the parties were unable to agree on the general scope of production that Sequoia would do as to all the categories of documents—even those that were otherwise agreed. Empower's expectation has been and remains that Sequoia will collect and produce all responsive documents falling within each category. Sequoia, however, insists that it will only produce those that are "uniquely in the possession of Sequoia." In other words, Sequoia will not produce documents that it believes may be in the possession of EFI. Empower is not insisting that Sequoia make duplicative document productions, but EFI has produced relatively few documents related to Sequoia. Empower has even identified to Sequoia's counsel which documents from EFI's production need not be produced again. All other documents, however, are not in EFI's production, and therefore should be produced, regardless of whether Sequoia believes EFI might have them. Moreover, the fact that EFI is still completing the custodial phase of discovery does not justify Sequoia's position because any overlapping production will likely be minimal given EFI's non-custodial document production is substantially complete and so few Sequoia-related documents were produced.

The parties are therefore at an impasse on these final two issues and judicial intervention is necessary.

## III.  DISCOVERY REQUESTS

Empower's original thirteen requests for documents (and Sequoia's objections) are as follows:

> (1)   All agreements between Defendant and Sequoia, including any drafts exchanged.

> **Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action. Sequoia further objects to this Request as seeking confidential, proprietary, trade secret, or otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(2)      All documents and communications related to any contemplated, actual, or anticipated Funding of Defendant by Sequoia, including without limitation, investment teasers, presentations, letters of intent, evaluations, studies, memorandums, forecasts, projections, calculations, and internal and external communications.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action as it essentially seeks all documents and internal and external communications Sequoia, a venture capital firm, has in connection with EFI without any limitation in subject matter. Sequoia further objects to the Request as vague and ambiguous as the terms "studies" and "evaluations" do not describe the materials sought with sufficient particularity. Sequoia further objects to this Request as seeking confidential, proprietary, trade secret, or otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(3)      *Request No. 3 was omitted from Empower's Document Requests.*

(4)      All documents provided to or obtained by Sequoia in connection with any investigative or due diligence process associated with any anticipated, actual or contemplated Funding of Defendant.

**Objection**: In addition to the General Objections, Sequoia objects to the Topic as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action. Sequoia further objects to this Request as seeking confidential, proprietary, trade secret, or otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(5)      All documents and communications related to any audits of Defendant and/or Defendant's Products and Services.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action. Sequoia further objects to the Request as vague and ambiguous as the term "audit" does not describe the materials sought with sufficient particularity. Sequoia further objects to this Request as seeking confidential, proprietary, trade secret, or otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(6)      All financial reports from or regarding Defendant, including following any Funding of Defendant by Sequoia.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action. Sequoia further objects to this Request as seeking confidential, proprietary, trade secret, or

8

otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(7)     All documents and communications related to or expressing concerns, including without limitation, consumer, regulatory, industry, or governmental concerns relating to Defendant, Defendant's Marks, Defendant's Products or Services, or Sequoia.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia further objects to the Request as vague and ambiguous as the term "concerns" does not describe the materials sought with sufficient particularity. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action to the extent it seeks documents about complaints (if any have been received) that are not related to EFI. Sequoia also objects to this Request to the extent the Request seeks confidential, proprietary, trade secret, or otherwise competitively sensitive information. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(8)     All documents and communications related to complaints, including without limitation, consumer, regulatory, industry or governmental complaints, criticism or negative press coverage, feedback or reviews relating to Defendant, Defendant's Marks, Defendant's Products or Services, or Sequoia.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome and oppressive in seeking documents that are equally available from EFI, a party to this lawsuit. Sequoia also objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action to the extent it seeks all documents relating to complaints (if any have been received) that are not related to EFI. Sequoia also objects to this Request to the extent the Request seeks confidential, proprietary, trade secret, or otherwise competitively sensitive information. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(9)     All documents and communications related to Empower, the Empower Marks, or Empower's Products and Services.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as unduly burdensome, disproportionate to any value, and oppressive as EAIC is a large provider of retirement services and may be referenced in documents that have no relevance to this action. Complying with this Request would require Sequoia to search its electronic files for "Empower"- placing an unreasonable, overly broad, and costly burden on Sequoia to search and identify relevant, responsive documents. Sequoia further objects to this Request to the extent it seeks documents protected from disclosure by attorney-client privilege or work product doctrine. Sequoia further objects to the extent the Request seeks confidential, proprietary, trade secret, or otherwise competitively sensitive information. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of

other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(10)   All documents and communications referring or related to the Action.

**Objection**: In addition to the General Objections, Sequoia objects to the Request to the extent it seeks documents protected from disclosure by attorney-client privilege or work product doctrine. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(11)   All documents and communications referring or related to the TTAB Proceedings.

**Objection**: In addition to the General Objections, Sequoia objects to the Request to the extent it seeks documents protected from disclosure by attorney-client privilege or work product doctrine. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(12)   All documents and communications related to instances of consumer confusion between Empower and Defendant, including without limitation confusion as to any association between Empower and Defendant, the Empower Marks and Defendant's Marks or the source or association of Defendant's Products and Services and/or Empower's Products and Services.

**Objection**: In addition to the General Objections, Sequoia objects to the Request to the extent it seeks documents protected from disclosure by attorney-client privilege or work product doctrine. To the extent that this Request seeks relevant documents, it is premature and would be duplicative of other evidence if Sequoia has any responsive documents at all. Sequoia, accordingly, does not intend to produce documents in response to this Request.

(13)   All documents and communications with other investors or potential investors relating to Defendant or Empower, including but not limited to documents that reference Defendant's Products and Services, Defendant's Marks, Empower, the Empower Marks, or Empower's Products and Services.

**Objection**: In addition to the General Objections, Sequoia objects to the Request as overbroad, disproportionate to the needs of this case, and not tailored to seek information relevant to the claims or defenses asserted in this action as it seeks all documents and communications with investors and potential investors relating to EFI, EAIC, or their products and services, without any limitation in subject matter. Sequoia also objects to the extent the Request seeks confidential, proprietary, trade secret, or otherwise competitively sensitive information. Sequoia, accordingly, does not intend to produce documents in response to this Request.

Horton Decl. Ex. I. Those original 13 requests were then narrowed and addressed with counsel during the meet and confer of February 9, 2024. Yusa Decl. Ex. P at 5 (reflecting revised topics).[2] Although the parties reached agreement on several categories of documents, two issues remain in dispute: (1) whether Sequoia should produce documents concerning **all** consumer complaints and regulatory issues relating to consumer lending laws, and not merely those directed to the mischaracterization of consumer credit and loan services; and (2) whether Sequoia's collection and production of all documents for all categories should include all responsive materials in Sequoia's possession, custody, and control, and not merely those that are "uniquely in the possession of Sequoia."

## IV.    LEGAL ARGUMENT

Federal Rule of Civil Procedure 45 allows Empower to seek documents from a third-party. Fed. R. Civ. P. 45. Sequoia is not immune from its scope. The standard of relevance is the same as under Federal Rules 26(b) and 34: whether the information sought is reasonably calculated to lead to the discovery of admissible evidence. *See LG Display Co. v. Chi Mei Optroelectronics Corp.*, 2009 WL 223585 at *2 (S.D. Cal. Jan. 28, 2009); *U.S. ex rel. Schwartz v. TRW, Inc.*, 211 F.R.D. 388, 392 (C.D. Cal. 2002). The Northern District of California need pass ultimate judgment on the issue of relevance. *See Negotiated Data Solutions LLC v. Dell, Inc.*, 2009 WL 733876 (N.D. Cal. 2009) ("[a] district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be **especially hesitant** to pass judgment on what constitutes relevant evidence thereunder") (emphasis added). "Where relevance is in doubt . . . the court should be permissive." *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 681 (N.D.Cal. 2006).

This is not to suggest that Empower's requested discovery should be unfettered. *See Broadband iTV, Inc. v. Hawaiian Telecom*, No. 15-MC-80053 HRL, 2015 WL 1778432, at *2 (N.D. Cal. Apr. 17, 2015). The Court must still consider whether the requested discovery is

---

[2] The Subpoena also requests Sequoia's appearance for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6). *See* Horton Decl. Ex. H at 4. Sequoia stated it would not produce anyone for deposition on the same grounds as its objections to producing documents. Empower holds its demand for a deposition in abeyance subject to production of documents. To the extent a deposition remains necessary, Empower hopes that resolution of the document issue may facilitate cooperation as to a later deposition.

1  unreasonably cumulative, whether the burden outweighs its benefit, and the opportunity to obtain

2  the requested information from other sources. *See, e.g., Mount Hope Church v. Bash Back!*, 705

3  F.3d 418, 425 (9th Cir 2012) (concerning cumulative requests); *In re Subpoena of* DJO, *,LLC* ,

4  295 F.R.D. 494, 497 (S.D. Cal. 2014) (concerning burden); and *Nidec Corp. v. Victor Co. of Japan*,

5  249 F.R.D. 575, 577 (N.D. Cal. 2007) (concerning alternate availability). But Empower's requests,

6  meet and confer efforts, and the present motion readily meet the cautionary guardrails of case law

7  interpretation of Rule 45.

8       **A.     The Requested Materials are Relevant**

9       Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any

10  party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

11  "Relevance is construed broadly to include any matter that bears on, or reasonably could lead to

12  other matter that could bear on, any issue that may be in the case." *Rogers v. Giurbino*, 288 F.R.D.

13  469, 479 (S.D. Cal. 2012). The rule "contemplates discovery into any matter that bears on or that

14  reasonably could lead to other matter that could bear on any issue that is or may be raised in a

15  case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649–50 (D.N.M. 2007) (citing *Bd. Of Trustees*

16  *of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.,* 237 F.R.D. 618, 621 (N.D. Cal.

17  2006)). "The burden of showing that a subpoena is unreasonable and oppressive is upon the party

18  to whom it is directed." *Phillips v. City of Fairfield*, No. CIV.S040377FCD PAN, 2006 WL

19  2868966, at 1* (E.D. Cal. Oct. 6, 2006) (citing *Goodman v. United States,* 369 F.2d 166, 169 (9th

20  Cir. 1966)).

21       Empower's requests plainly seek relevant materials. Indeed, Sequoia concedes as much by

22  agreeing to produce documents in response to most of the categories that Empower proposed. The

23  disputed issues—(1) documents related to consumer complaints and regulatory issues relating to

24  consumer lending laws; and (2) documents that ***might*** also be in EFI's possession—are just as

25  relevant. Consumer and regulatory complaints are directly relevant to Empower's deceptive

26  business practices and false advertising claims. They also directly relate to Empower's allegations

27  of harm to its reputation and in the market place when consumers confuse EFI's illegal practices

28  with Empower. That some of these documents may also be in EFI's possession does not make

1    them any less relevant. Therefore, all these materials should be produced.

2    **B.     The Requested Materials Do Not Impose an Undue Burden**

3           As to burden, the Court must consider "the needs of the case, the amount in controversy,

4    the parties' resources, the importance of the issues at stake in the action, and the importance of

5    discovery in resolving the issues." FED. R. CIV. P. 26(b)(2)(C)(iii). The party resisting discovery

6    (Sequoia) bears the burden of persuasion and must "allege specific facts which indicate the nature

7    and extent of the burden, usually by affidavit or other reliable evidence." *Playstudios, Inc. v.*

8    *Centerboard Advisors, Inc*., No. 218CV1423JCMNJK, 2019 WL 6493926, at 3* (D. Nev. Dec. 3,

9    2019). "Conclusory or speculative statements of harm, inconvenience, or expense are plainly

10   insufficient." *Id*. (citing *U.S. E.E.O.C. v. Caesars Entertainment*, 237 F.R.D. 428, 432 (D. Nev.

11   2006)).

12          Sequoia cannot provide specific facts demonstrating compliance with the Subpoena—

13   especially as narrowed—would constitute an undue burden. Sequoia initially complained about

14   having to search for responsive documents, demanded that Empower specifically and preemptively

15   identify the documents it seeks, and disregarded the fact that Empower has already provided such

16   clarification. *See* Horton Decl. Ex. O. Mr. Gilchrist was particularly dismissive in stating "one

17   does not need to do anything but look at the requests . . . to determine that they seek every

18   document. . . . So, no special consultation with the [Sequoia] is required". Horton Decl. Ex. L at

19   4. Mr. Gilchrist's dismissiveness cannot be viewed as resembling any reasonably compliant

20   approach to addressing a valid subpoena, especially post-narrowing of the request to the same.

21   Mr. Gilchrist cannot understand the expense of culling without first having a discussion with

22   Sequoia as to what might need be culled. Moreover, Sequoia is not a small-time operator—it

23   services clients worldwide with billions of dollars in assets. Sequoia is undoubtedly a sophisticated

24   company, equipped to respond to such requests, and indeed has been ordered to do so in other

25   cases in which it was an investor. *See e.g.*, *Viacom Int'l, Inc. v. YouTube, Inc.*, C08-80129 SI, 2008

26   WL 3876142 (N.D. Cal. Aug. 18, 2008). Common sense alone indicates it can meet the burden of

27   compliance.

28          The requests (especially as narrowed) are tailored to seek only information regarding the

13

relationship between Sequoia and EFI as it pertains to the challenged marks and goods and services offered under the same; the funding of Sequoia by EFI as it pertains to expanding its brand and goods and services thereunder; EFI and Empower's Marks and related Products and Services; and customer confusion between Empower and EFI. The requests used defined terms to target only those materials related to EFI or products and services offered under the EMPOWER brand. This is not a request for each and every document referencing EFI, but only those that touch on its brand, products offered thereunder, and legal complications related to selecting that brand— including the present litigation. Indeed, EFI does not object to the breadth of these categories as Empower has now narrowed them, but objects to producing documents beyond those that they believe are "uniquely in the possession of Sequoia." But Sequoia has no way of knowing what documents are in EFI's possession, and it does not matter if documents are in EFI's possession but EFI has failed to produce them. Empower has mitigated Sequoia's burden by identifying to its counsel a list of documents that EFI has already produced and confirming that Sequoia need not produce them again. *See* Yusa Decl. Ex. P at 3-4. But all other responsive documents that Sequoia has are relevant and producing them would not be an undue burden because they are apparently not available to EFI to produce.

## C.     EFI's Document Production Does Not Excuse Sequoia's Failure to Comply

EFI continues to object on the basis that Empower must wait for EFI's potential production of overlapping responsive documents prior to any production by Sequoia. But as Sequoia's counsel has been repeatedly told, "there is no general rule that [a party] cannot seek nonparty discovery of documents likely to be in [another party's] possession." *See Viacom*, 2008 WL 3876142 at *3. "There is no legal precedent giving a party the right to demand discovery in a certain order… The Federal Rules of Civil Procedure do not permit a party to make unilateral decisions regarding the sequence and timing of depositions during discovery." *Russell v. Maman*, No. 18-CV-06691-RS (AGT), 2020 WL 5943844, at *4 (N.D. Cal. Oct. 7, 2020); *see also* Fed. R. Civ. P. 26(d)(3)(A) ("Unless the parties stipulate or the court orders otherwise, methods of discovery may be used in any sequence.").

The Subpoena was not premature. Sequoia should comply with the Subpoena even if it is

possible that additional documents may be forthcoming from EFI. And discovery to date has shown EFI's production to be incomplete. The contention that Sequoia need not comply with the Subpoena until the end of discovery with EFI therefore lacks merit. That these documents are also in the possession or control of EFI does not preclude Sequoia's compliance with the Subpoena. Courts routinely mandate subpoena compliance, regardless of the possibility of duplicative of documents produced by parties to a lawsuit, for among other reasons to test the accuracy and completeness of a party's responsiveness to Rule 34 requests. *E.g. LG Display*, 2009 WL 223585 at *3. Empower has reviewed these documents produced to date and found significant gaps that would include documents in the possession of Sequoia. *See* Horton Decl. ¶12. In such circumstances, it is appropriate to order a third party to produce documents that will aid in completing discovery. *See Viacom*, 2008 WL 3876142 at *3 (ordering production from third parties "even though the documents are likely to be in possession of defendants" where the completeness of defendants' productions was questionable). Sequoia is that third-party.

**V.     CONCLUSION**

Empower respectfully requests an order granting its motion and compelling Sequoia to comply with the Subpoena plus any further relief the Court deems appropriate.

DATED: March 13, 2024

**POLSINELLI LLP**

By:  _/s/ Miya Yusa_____
Colby B. Springer
cspringer@polsinelli.com
Miya Yusa
myusa@polsinelli.com
Three Embarcadero Center, Suite 2400
San Francisco, CA  94111
T:  415-248-2100

*Attorneys for Empower Annuity Insurance Company of America*

## <u>CERTIFICATE OF SERVICE</u>

I, Diane McNichol, declare as follows: I am employed in Seattle, Washington. I am over the age of eighteen years and not a party to this action. My business address is 1000 Second Avenue, Suite 3500, Seattle, Washington 98104. On March 13, 2024, I served the within

**EMPOWER'S NOTICE OF MOTION AND MOTION TO COMPEL SEQUOIA CAPITAL OPERATIONS LLC TO COMPLY WITH SUBPOENA**

on the interested parties in this action addressed as follows:

Greg Gilchrist
VERSO Law Group
565 Commercial Street, Fourth Floor
San Francisco, CA 94111
Telephone: (415) 534-0478
Email: greg.gilchrist@versolaw.com

*Attorneys for Sequoia Capital Operations LLC*

☐ **(BY MAIL)** By placing such document(s) in a sealed envelope, with postage thereon fully prepaid for first class mail, for collection and mailing at Polsinelli LLP following ordinary business practice. I am readily familiar with the practice at Polsinelli LLP for collection and processing of correspondence for mailing with the United States Postal Service, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

☐ **(BY OVERNIGHT MAIL)** By placing such document(s) in a sealed envelope, for collection and overnight mailing at Polsinelli LLP following ordinary business practice. I am readily familiar with the practice at Polsinelli LLP for collection and processing of overnight service mailing, said practice being that in the ordinary course of business, correspondence is deposited with the overnight messenger service, Federal Express, for delivery as addressed.

☒ **(BY ELECTRONIC MAIL)** By transmitting such document(s) electronically from my e-mail address, dmcnichol@polsinelli.com at Polsinelli PC, to the person(s) at the electronic mail address listed above.

I declare under penalty of perjury under the laws of the State of California and the State of Washington that the foregoing is true and correct and that this declaration was executed on March 13, 2024, at Bainbridge Island, Washington.

*/s/ Diane McNichol*
_____
Signature

Diane McNichol
_____
Print Name

EMPOWER'S MOTION TO COMPEL
SEQUOIA CAPITAL OPERATIONS LLC TO COMPLY WITH SUBPOENA